SOPHIA E. DEAN

*v.*

SAMUEL E. BAILEY, for use, etc.

1. MARRIED WOMEN—*how far protected in their separate personal property, while in the use and under the control of their husbands.* While it may be true, if a married woman owning personal property, permits her husband to deal with and sell it as his own, a purchaser from him would be protected in his title against a claim by her—that would be on the ground that she had held him forth to the world as her agent, with power to sell; but it does not follow, because the wife merely allows her husband to have a general use and control over her personal property, such use and control being of a character consistent with their common interests, and the proper enjoyment of it by both, that it should thereby become liable to the payment of his debts.

2. So, where the husband and wife live upon a farm, which, together with the stock and implements upon it, necessary for its cultivation, have been bought with the money of the wife, the husband may exercise the same care and control over such personal property as he would over his own, and, in the eyes of the public, have the same freedom in its use, without its thereby becoming liable to the payment of his debts. This protection in the enjoyment of her own property must be given to the wife, under the act of 1861.

APPEAL from the Circuit Court of Fayette county; the Hon. A. J. GALLAGHER, Judge, presiding.

31—50TH ILL.

The facts are presented in the opinion of the court.

Mr. GEORGE W. WALL, for the appellant.

Messrs. HENRY & FOUKE, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action on a replevin bond, brought by Bailey, as sheriff, against Sophia E. Dean and others, under the following circumstances :

Executions against W. W. Dean, the husband of the said Sophia, had been levied on a mule, a quantity of potatoes, and a horse-power. His wife replevied this property from the sheriff, but the suit was dismissed without a trial upon the merits. The sheriff then brought this suit upon the bond, and the defendants pleaded that the property replevied was the property of Sophia E. Dean. On this plea, issue was joined, and a trial had, which resulted in a verdict and judgment for the plaintiff, from which Sophia E. Dean appealed. There was evidence that her husband was wholly insolvent, and that the farm upon which they lived had been bought with the money of the wife, derived in part from the estate of her father, and in part from other relations. There was similar evidence in regard to the purchase of the horse-power and mule. The potatoes had been raised upon the farm, as she testifies, by labor paid with her money.

The court gave to the jury, for the appellee, the following instructions :

"3d. If the jury believe, from the evidence, that Sophia E. Dean allowed W. W. Dean to buy and sell the personal property on said farm as his own, and in his own name, without giving notice to the world that he, W. W. Dean, was only an agent, and that the property in controversy was a part of said

property so bought, then they will find the value of said property for plaintiff.

" 4th. If the jury believe, from the testimony, that the horse-power and mule in question were used and controlled by W. W. Dean, as his own property, with the knowledge and consent of Sophia E. Dean, and that at the time of such use and control said Dean was the head of the family of Sophia E. Dean, then they will find for the plaintiff the value of the property proven.

" 5th. The jury are further instructed, that they must believe the property in question was acquired by Sophia E. Dean from some person other than her husband, and by and independent of him, and that such was not used, exercised or controlled by Dean as his own property, with her knowledge and consent, before they can find for the defendant."

It is plain that the rule laid down in these instructions would, in many cases, substantially destroy the protection which the statute in regard to the property of married women, was designed to give. Undoubtedly, if a married woman, owning personal property, permits her husband to deal with and sell it as his own, a purchaser from him would be protected in his title against a claim by her, but it would be on the ground that she had held him forth to the world as her agent, with power to sell. But if we were to hold that a wife, owning personal property, rendered it liable for her husband's debts, merely by allowing him to have a general use and control over it, as laid down in these instructions, the property of the wife could be secure only, as suggested by counsel, by a practical divorce, *a mensa et thoro*, and by setting up a domestic establishment entirely apart from her husband. Take for example such a case as the present, and there must be many like it, where the husband and wife live upon a farm, which, with the stock upon it, has been bought with the money of the wife. It must follow, from the nature of the relation between husband and wife, from their mutual confidence and their common interests,

that the husband, to all outward seeming, would use much of the property as if it were his own. Living under the same roof with his wife, the head of the family, and as solicitous for the material prosperity of his wife as for his own, it would be unavoidable that he should exercise the same care and control over her property as he would over his own, and, in the eyes of the public, have the same freedom in its use. We must construe this statute for the protection of married women in accordance with the intent of its framers, and accept all its innovations, and when the legislature has said that a married woman may own a horse in her own right, it is impossible for us to say that, if she allows her husband to ride or drive that horse as he would one of his own, she thereby forfeits her title to his creditors. As we have already remarked, such use must necessarily follow from the relation of husband and wife, if such trust and confidence exist between the parties as should exist, and as the law supposes to be implied in that relation.

It may be said that under this construction of the statute, the husband, using his wife's property as his own, would be able to obtain a credit to which he was not entitled. This is true, and this consideration was probably not forgotten by the legislature when it passed the law, but that body did not deem the fact that the husband might occasionally obtain an undeserved credit, a sufficient reason for withholding from the wife a just protection in the enjoyment of her own property, and it is simply our province to apply the law as we find it written.

Undoubtedly, the attempt will so often be made to use this law as a cover for fraud, that juries should always exercise a rigid scrutiny in cases of this character. In order to prevent the statute from being thus perverted, we should still hold, as we held in *Wortman* v. *Price*, 47 Ill. 22, that if the wife places her money in the hands of her husband, to be used by him in trade, it is virtually a loan to him of the money, and his stock in trade would be liable for his debts. So, too, we should hold, as we held in *Elijah* v. *Taylor*, 37 Ill. 249, if the husband by

his personal labor raise a crop upon the land of his wife, it would be liable for his debts, subject, probably, to a lien on her part for a reasonable rent, though this point did not arise in that case. But, on the other hand, if the wife has invested her money in a farm, and in the stock and implements necessary for its cultivation, which would often be the best mode of providing for her children, we see no reason why she should not employ the aid of her husband in its management, without subjecting her property to execution for his debts.

We are of opinion that the 3d, 4th and 5th instructions given for the appellee should have been refused.

For these errors the judgment must be reversed and the cause remanded.

*Judgment reversed.*