### JETTA ROBINSON *et al.*

*v.*

### CARSTEN BREMS *et al.*

1. FRAUD—*as against creditors—business in wife's name.* Where an insolvent husband carries on business in his wife's name, claiming to be her agent at a salary, unless it is done in good faith, and with the separate means of the wife derived from some other source than the husband, the stock in trade and furniture are liable to be sold for his debts.

2. If a collusive arrangement exists between a husband and wife, by which it is secretly understood between them that the name of the wife shall be used in the carrying on of business, and that the wife shall hold her husband's property and business to hinder, delay or defraud his creditors, the transaction will be fraudulent as to such creditors.

3. If a married woman advances her own separate money, and places the same in the hands of her husband, for the purpose of carrying on any general

352          ROBINSON *et al.* *v.* BREMS *et al.*          [Sept. T.

Opinion of the Court.

trade, although in her name, and the husband, by his labor and skill in the undertaking, increases the funds, the entire capital embarked in the enterprise, together with the increase, will not constitute the separate estate of the wife, but will be liable for the debts of the husband.

4. SAME—*possession as evidence of ownership.* If a wife allows her husband to have and retain the possession of goods and stock in trade claimed by her as her separate property, and to transact business with it, such possession is *prima facie* evidence of ownership in him as to his creditors, and in a contest between the wife and such creditors she must show, by a preponderance of evidence, that she is the owner of the property, or lawfully entitled to its possession.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. E. & A. VAN BUREN, for the appellants.

Mr. JOHN J. KNICKERBOCKER, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was an action of replevin, brought by appellants, to obtain possession of certain goods distrained for rent by appellees as the property of Isaac S. Robinson and Abraham Robinson, the husbands of appellants.

The only question in the case is whether the title to the property was in appellants or their husbands. It is claimed the court erred in the instructions to the jury, and that the verdict of the jury was clearly against the evidence.

At the time of the great fire in Chicago, in the fall of 1871, the husbands of appellants, who were brothers, were, and for several years had been, engaged in business, as partners, in the cigar and tobacco trade. They were burned out, and quit business some $28,000 in debt. In the spring of 1872 a restaurant, saloon and cigar business was commenced at 193 East Lake street and 38 Fifth Avenue, in the names of their wives, from which a profit of from $4000 to $5000 a year was derived. The books were kept and the purchases and sales made principally by the brothers, the appellants living with them on the premises and working in the restaurant, kitchen

and lodging rooms up stairs. It was claimed by appellants the capital used in the purchase of the furniture and stock was their separate property, being money obtained by them from relatives; that their husbands were employed by them as agents to manage the business, at a salary of $100 each per month, this salary being paid every month, and that the husbands had no interest whatever in the business.

On the other hand, it was claimed by appellees this was all a fraudulent device to protect the property of the husbands, and prevent the collection of just debts held against them; that the husbands had, after the fire, collected $1600 from the insurance companies, and $3000 or $4000 on their outstanding accounts; that one of them, Abraham, made $2000 in a partnership venture with one Fredericks; that these moneys were not satisfactorily accounted for, and, in fact, constituted the capital used in furnishing and stocking the house on the corner of Fifth Avenue and East Lake street. It was further urged, even if appellants advanced their own separate money, and placed the same in the hands of their husbands for the purpose of carrying on the business, yet this was done for the benefit of their husbands, who had possession of the property and claimed it as their own, and managed the business and paid debts of their own out of the stock on hand, and increased the fund by their labor and skill.

We can not mention, in detail, the evidence to be found in the voluminous record now before us. The case of appellants is based almost wholly upon their own testimony and that of their husbands. Suffice it to say, there is much to be found in the surrounding circumstances and in the conduct of the parties, and in the cross-examinations of appellants and their witnesses, and in the very nature of the case itself, tending strongly to show a collusive and fraudulent arrangement to hinder and delay creditors in the collection of their debts. Witnesses were introduced upon the trial to impeach the testimony of both Abraham and Isaac S. Robinson, and no attempt was made by appellants to sustain their characters for

23—90 ILL.

truth and veracity. The jury saw the witnesses upon the stand and heard them testify, and noted their demeanor, and could better judge than we can of their credibility. The jury found against the claim of appellants, and we do not feel that we would be justified in disturbing that finding.

The court properly modified the first instruction asked for by appellants before giving it. It is plain, unless the business in question was carried on in good faith and with the separate property of appellants, the stock in trade and furniture were liable to be sold for the debts of the husbands.

The second instruction, as asked, was properly refused. It entirely ignored the question of the property being the separate property of the appellants. The court, among other modifications of this instruction, stated to the jury, that "upon the question of good faith of the plaintiffs in making such investments and employing their respective husbands as agents, the jury may take into consideration the circumstances, if proven by the evidence, that their said agents were paid salaries as such." We do not understand this as intimating to the jury that because appellants paid their agents salaries it was a case of fraud. They claimed upon the trial they had paid such salaries, and it was denied by appellees. It was one of the points in issue, and the clear intendment of the instruction, as modified and given, was that such payment of salaries, if satisfactorily proven, was an evidence of good faith. The other modification to this instruction is in conformity to the law, as announced by this court in the case of *Wilson* v. *Loomis*, hereinafter cited.

It is urged, the second instruction given for appellees is wrong, and is not based upon the evidence. It tells the jury that possession of personal property is *prima facie* evidence of ownership, and if they believe, from the evidence, the husbands of appellants were in possession of the property and appellants were not, then appellants must show, by a preponderance of evidence, they were the owners of the property or lawfully entitled to its possession. This instruction announces

a correct principle of law, and it was fully justified by the evidence of Carsten Brems and Galpin, and by some of the statements made by appellants themselves and their husbands on cross-examination.

Complaint is also made of the first instruction for appellees, which told the jury that if they believed, from all the evidence in the case, a collusive arrangement existed between appellants and their husbands, by which it was secretly understood between them the names of appellants should be used in the business, and that appellants should hold their husbands' property and business, then such conduct was fraudulent and unlawful as against the distress warrant, and in such case the jury should find against them. This instruction announces a correct principle of law, and there was ample evidence in the record upon which to base it.

The third, fourth, eighth and ninth instructions, given for appellees, are based upon the law as announced by this court in *Wilson* v. *Loomis,* 55 Ill. 352, to the effect, if a married woman advances her own separate money, and places the same in the hands of her husband for the purpose of carrying on any general trade, although in the wife's name, and the husband, by his labor and skill in that undertaking, increase the funds, the entire capital embarked in the enterprise, together with the increase, will not constitute the separate estate of the wife, but will be liable for the debts of the husband. To the same effect are the cases of *Elijah* v. *Taylor,* 37 Ill. 247, and *Wortman* v. *Price,* 47 id. 22. See, also, *Brownell* v. *Dixon,* 37 Ill. 197. The cases of *Dean* v. *Bailey,* 50 Ill. 481, *Blood* v. *Barnes,* 79 id. 437, and *Primmer* v. *Clabaugh,* 78 id. 94, are entirely consistent with those above cited, and in *Dean* v. *Bailey* and *Blood* v. *Barnes,* the marked differences between the two classes of cases are pointed out and commented upon.

There is no substantial error in any of the instructions given by the court, and the judgment of the Superior Court must be affirmed.

*Judgment affirmed.*