## BENJAMIN A. MINK

### v.

## DANIEL F. CRILLY AND CHARLES H. BLAIR.

*Husband and Wife—Wife's Property Loaned to Husband, not Subject to his Debts—Trover—Instruction.*

1. Under our statutes the husband occupies the same relation to the wife's property as does a stranger. A loan of her property to him, to use in carrying on his business, does not make it his or subject it to his debts.

2. In an action of trover to recover the value of certain fixtures, loaned by the wife to the husband, and taken on a distress warrant for his indebtedness, it is *held:* That the placing of the wife's property in the hands of the husband for the purpose of carrying on his general trade, did not subject it to the payment of his debts; and that a contrary instruction was erroneous.

*Wilson* v. *Loomis,* 55 Ill. 352, and *Robinson* v. *Brems,* 90 Ill. 351, distinguished.

### [Opinion filed June 8, 1887.]

APPEAL from the County Court of Cook County; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. LEVI SPRAGUE, for appellant.

Mr. DANIEL L. SHOREY, for appellees.

BAILEY, J. This was an action of trover brought by Benjamin A. Mink against Daniel F. Crilly and Charles A. Blair, to recover the value of certain fixtures, furniture and utensils in a meat market formerly occupied by one William C. Ogden. Said property seems to have been seized by the defendants on a distress warrant issued by them against said Ogden, and afterward sold on a judgment and execution in the distress proceedings. In September, 1884, said Ogden rented said meat market of the defendants. Said fixtures, furniture and utensils appear to have been in the market at the time Ogden rented it, and the evidence tends to show that Mrs. Eliza

Ogden, the wife of said William C. Ogden, for the purpose of furnishing her husband facilities for carrying on business in said market, purchased said fixtures in her own name and with her own money and allowed her husband to use the same, he paying her $5 per month therefor.

In June, 1885, Ogden failed in business, and on the 1st day of August following, the defendants distrained said property, the same still remaining in said market. The evidence also tends to show that some time after the failure of Ogden and prior to the levy of the distress warrant, Mink, the plaintiff, purchased said property of Mrs. Ogden, but that the defendants, having taken possession of said market, fastened the same up and debarred the plaintiff from access thereto for the purpose of removing said property therefrom. On this evidence the court, at the instance of the defendants, gave to the jury the following instruction :

" The court instructs the jury that if a married woman places her own separate property in the hands of her husband for the purpose of carrying on his general trade, and if he so uses it, then such property will be liable for the debts of the husband."

Under our statutes in relation to the rights and liabilities of married women, the husband occupies the same relation to the wife's property as does a stranger. She may sell it or loan it to him, or constitute him her agent for its management or disposition, but a gift of it by her to him will not be presumed, in the absence of proof to that effect. Tomlinson v. Matthews, 98 Ill. 178. Had a stranger purchased the property in question of the former owner and loaned it to Ogden to be used by him in his market, no one, we think, would insist that such facts alone would make it liable to be taken for Ogden's debts. In the absence of fraud or collusion the lender would still retain the title to the property as against creditors, and would have a right any time to reclaim it as against them. As the law now stands, Mrs. Ogden occupied the same position, and the mere fact that she loaned said property to her husband to use in carrying on his trade or business, did not make it his property or subject it to his debts.

The foregoing instruction, however, is sought to be justified by the decisions of the Supreme Court in Wilson v. Loomis, 55 Ill. 352, and Robinson v. Brems, 90 Ill. 351. In those cases the wife advanced her money to the husband to be used by him in carrying on a general business or trade, and by a collusive arrangement between them said business was carried on in the name of the wife, the husband managing it, and by his labor and skill in the undertaking, increasing the fund. It was held that the entire fund thereby became liable to the husband's debts. It is manifest that the facts in those cases involved various elements which are wanting in the hypothesis of said instruction. Mrs. Ogden did not advance to her husband money to be employed by him in general trade or business, but simply loaned to him specific articles of personal property, to be used by him in his business, and to be afterward returned to her in specie. There was no commingling of her money with his gains and earnings, and there is no hypothesis in the instruction of fraud or collusion between them. Said authorities therefore involve a state of facts essentially different from the present case, and do not tend to justify said instruction.

For the error in giving said instruction the judgment will be reversed and the cause remanded.

*Judgment reversed.*