DANIEL H. BENNETT *et al.*

*v.*

PETER S. STOUT *et al.*

*Filed at Ottawa November 20, 1880—Rehearing denied March Term, 1881.*

1. FRAUDULENT CONVEYANCE—*made before lien attaches, may be avoided.* The fact that at the time a conveyance is made to the debtor's wife, the creditor's judgment was no lien on the land, by reason of no execution having been issued thereon within a year, will not prevent the creditor, after the revival of his judgment and suing out an execution, from questioning the *bona fides* of the transaction. If the debtor paid for the land, and had the title made to his wife, in fraud of the rights of the creditor, the land may be reached in equity by the creditor.

2. SAME—*former decision.* The case of *Newman* v. *Willetts,* 52 Ill. 98, is not to be understood as announcing a different doctrine. That case holds, and was only intended to hold, that where a bill is filed *in aid of an execution,* the judgment on which the execution was issued must be, at the time of filing the bill, a lien on the land sought to be subjected to its payment. What was said in respect to the necessity of the existence of a lien in order that the creditor might have his remedy, must be taken as applicable only to the facts of that case.

3. SAME—*wife employing husband.* The fact that a wife living with her husband employs him, as her agent, to cultivate her farm, keep it in repair, have the grain harvested, stored and sold, is not evidence that the property belongs to the husband, nor does such an agency convert the products of the farm to the husband, or render them liable for his debts.

4. EVIDENCE—*declarations of others, not in the presence of the grantee, inadmissible to show fraud.* On bill to set aside a conveyance of land to a wife, by a creditor of her husband, on the ground that the latter bought and paid for the property, and had the title made to his wife to defraud his creditors, the declarations of the husband and others, made when the wife was not present, and

| 98 | 47 |
| 31a | 414 |
| 98 | 47 |
| 143 | 150 |
| 98 | 47 |
| 147 | 384 |
| 98 | 47 |
| 156 | 312 |
| 98 | 47 |
| 169 | 643 |
| 171 | 578 |
| 71a | 325 |
| 98 | 47 |
| 84a | 230 |
| 98 | 47 |
| 196 | 3249 |
| 98 | 47 |
| e113a | 591 |

without her assent, are not admissible to affect her rights. The same rule applies to declarations of her grantor. They can not be received to defeat her title.

Appeal from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kendall county; the Hon. Hiram H. Cody, Judge, presiding.

Mr. E. F. Bull, for the appellants, presented an argument commenting only upon the facts in the case, in the opening.

Mr. Charles Wheaton, for the appellees:

The declarations of the husband of Mrs. Stout, or of her grantor and others in her absence, are not admissible for any purpose, unless she is connected with them in some way. *Prior* v. *White,* 12 Ill. 261; *Pierce* v. *Hasbrouck,* 49 id. 23.

In a State where a *feme covert* may own property in her own right, and carry on business in her own name, she may employ her husband to look after her property without subjecting it to the payment of his debts. *Driggs* v. *Russell,* 3 B. R. 256; *Shackelford* v. *Collier,* 6 Bush. 149; *Voorhees* v. *Barristed,* 5 Blatch. 495; 16 Wall. 16; *Danforth* v. *Wood,* 11 Paige, 9; *Bongard* v. *Core,* 82 Ill. 19.

Complainant's judgment being no lien when this land was conveyed to the wife of the debtor, he can not have the same set aside, even if it was a voluntary settlement on her by the debtor. *Newman et al.* v. *Willetts,* 52 Ill. 99; *Weis* v. *Tiernan,* 91 id. 27; *Beavan* v. *Lord Oxford,* 6 D. M. & G. 507; Kerr on Fraud, 530.

Mr. E. F. Bull, for the appellants, in reply:

The cases of *Newman et al.* v. *Willets* and *Weis* v. *Tiernan,* have no application to this case, the judgments being dormant and not having been revived, as in this case.

Any voluntary settlement, whether made in good faith or not, can be set aside in favor of any creditor whose claim

existed at the time of such settlement, provided such creditor has reduced his claim to judgment and obtained execution thereon. *Moritz* v. *Hoffman,* 35 Ill. 553; *Jassoy* v. *Delius,* 65 id. 469; *Mitchell* v. *Byrne,* 67 id. 522.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the year 1859, appellants recovered a judgment against Peter S. Stout, in the La Salle circuit court, on a claim for goods sold to him previous to that time; but an execution was not issued within a year from the adjournment of the court. The judgment, in November, 1864, was revived by *scire facias.* Between the time the judgment became dormant and its revival, and in the year 1862, William Cooney conveyed a farm in Kendall county to Mary F. Stout, the wife of defendant Stout. Afterwards, in November, 1864, she conveyed to the defendant Van Fleet. In March, 1865, an execution was issued on the revived judgment, against Stout, directed to the Sheriff of Kendall county, which was, on the 14th day of April following, levied on the lands in controversy, but the certificate of levy was not filed for record until the 26th of February, 1866, the land being in the possession of Van Fleet, under his conveyance from Mrs. Stout. It is claimed, that at the time of this levy a large amount of personal property was seized, which was replevied, but ultimately, its proceeds amounting to over $700, was recovered by the plaintiffs in execution, and should have been, but were not, credited on the execution.

This bill was filed to uncover the title to the land and subject it to sale in satisfaction of the execution, and it is claimed that Stout was the real purchaser and paid with his own means for the land, but, to hinder, delay and defraud plaintiffs in execution, he had it conveyed to his wife, and to more effectually accomplish that purpose, he and his wife subsequently conveyed the land to Van Fleet, who was an uncle of his wife.

Answers were filed denying the fraud, and on a hearing in the circuit court, on bill, answers, replications and proofs, a decree was rendered dismissing the bill for want of equity. Thereupon complainants prosecuted a writ of error from the Appellate Court for the Second District, where, on a hearing, the decree of the circuit court was affirmed, and they bring the case on appeal to this court and ask a reversal.

It is urged, that as this conveyance was made to Mrs. Stout before the judgment became a lien on the land, there is no ground for questioning the purposes of the conveyance to her; that as complainant, when the title was conveyed to her, had no lien, they have no right to inquire whether the conveyance was fraudulent or made in good faith, and the case of *Newman* v. *Willetts*, 52 Ill. 98, is referred to as announcing the doctrine. That case holds, and was only intended to hold, that where a bill is filed in aid of an execution, the judgment on which it was issued must be, at the time of filing the bill, a lien on the land. In that case there was no execution on the judgment within a year after its rendition, and an execution was issued without reviving the judgment, and it was to aid this unauthorized execution that bill was filed; and all that was there said about a lien was in reference to that state of facts, and was intended to be no more comprehensive. To hold that equity would afford no relief, except in cases where the judgment had become a lien on the real estate at the time of the sale, would virtually repeal the statute. But few sales are made to defraud creditors after their claims have become a lien.

Fraudulent conveyances, almost without exception, are made before judgment, or a lien has attached, and the statute is mainly beneficial in reaching cases where the conveyance is made before there is any lien. Where a lien has attached before a fraudulent conveyance is made, there is no need of the statute or a bill to aid the execution, as, under it, a sale may be made which would remove the fraudulent title by its own force.

The question to be decided is one of fact. It is: Did Stout purchase the land with his own means and have it conveyed to his wife for the purpose of preventing complainants from collecting their judgment against him?

The evidence is inharmonious, and a portion of it is very contradictory and irreconcilable. Many declarations of the husband, when the wife was not present and in nowise assented, are in the record and are pressed as showing fraud. Mrs. Stout's evidence seems to be consistent, and she denies all fraud or intention to commit a fraud. She swears positively that she made the first payment with her own earnings and savings before her marriage; that her father loaned her $500 to pay on the farm, and the balance was paid with the products from the farm; that her father advised her to purchase it, and the evidence shows that her mother went with her to examine it before she purchased. Her evidence is corroborated by that of her husband.

To overcome this evidence is the fact of the husband's indebtedness, his negotiating for the purchase, and his declarations as to the sources from which the money to make the first payment came, with his other declarations, which were all made in her absence and without her assent. We find none attributed to her inconsistent with good faith on her part. When he said he obtained the $400 first paid, from Doud, if it is true he made such a declaration, she was not present, nor did she admit its truth, and it would violate all rules of evidence to permit the declarations of a third person or a grantor to defeat the title of his grantee. After the conveyance is made, to permit the grantor to make statements that would defeat his grantee's title would be extremely unjust and fraught with great iniquity. See *Pierce* v. *Hasbrouck*, 49 Ill. 23; *Prior* v. *White*, 12 id. 261; *Fisher* v. *Stevens*, 16 id. 397; *Meixsell* v. *Williamson*, 35 id. 529; *Aiken* v. *Hodge*, 61 id. 436; *Pike* v. *Colvin*, 67 id. 227, and *Simmons* v. *Jenkins*, 76 id. 479. And equally wrong to give effect to the declarations of persons not parties to the conveyance. It would

hardly appear necessary to quote authorities on so clear and just a proposition.

It seems to be urged that Stout cultivated the farm, and this is strong evidence of fraud. Where the wife may own property of this character, she, from the necessity of the case, must have it cultivated, kept in repair, the grain harvested, stored and sold, and, as it is not deemed proper by community that she should do so in person, it involves the necessity of employing an agent, and it has been repeatedly held that the wife may employ the husband for the purpose. In fact, owing to their relations, where she regards him as competent for the place, who could be more proper. In fact, when living together and on the farm of the wife, the harmony of the family would seem to require that a stranger should not be given its entire control, excluding the husband from all management of the farm, its stock and affairs.

Mrs. Stout, in this case, swears her husband was her agent both in the purchase of the farm and in its cultivation and management. Nor does such an agency convert the products of the farm to the husband or render them liable for the debts of the husband's creditors. *Bongard* v. *Core*, 82 Ill. 19.

This question is sufficiently discussed in that case to require nothing more on that question in this.

Although there is some evidence in the record tending to prove the fact that the first payment was made with money of the husband, we think it overcome by other evidence, and that the decree of the circuit court is sustained by the evidence, and the decree of the Appellate Court must be affirmed.

*Decree affirmed.*